Ravi Mehta (CA #113805)
**Law Offices of Ravi Mehta**
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
916-486-1955
rmehta@capitol-advocates.com

Michael J. Laszlo (CA#327203)
**LaszloLaw**
2595 Canyon Blvd. Suite 210
Boulder, CO 80302
303-926-0410
mlaszlo@laszlolaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Plaintiffs, | Case Number: 3:22-cv-5001 |
| Gregory Van Wagner, an individual, Daniel Pilkey, an individual, Peter Bothwell, an individual, | **COMPLAINT** |
| vs. | |
| Defendants. | |
| Court Of Master Sommeliers, Americas, a California nonprofit mutual benefit corporation; Devon Broglie; Matt Stamp; Peter Granoff; Craig Collins; Steve Poe; Eric Entrikin; Thomas Price; Laura Williamson; Virginia Philip; Scott Carney; Randy Bertao; Cameron Douglas; Brett Davis; Ron Edwards; and Reggie Narito. | |

COMPLAINT
Case No.: 3:22-cv-5001

NOW COME Plaintiffs Gregory Van Wagner, Daniel Pilkey and Peter Bothwell, by and through undersigned counsel, who bring this action against Defendants Court of Master Sommeliers, Americas, Devon Broglie; Matt Stamp; Peter Granoff; Craig Collins, Steve Poe; Eric Entrikin; Thomas Pierce; Laura Williamson; Virginia Philip; Scott Carney; Randy Bertao; Cameron Douglas; Brett Davis; Ron Edwards and Reggie Narito, and allege as follows:

**NATURE OF THE CASE**

1.      This case is about Gregory Van Wagner, Daniel Pilkey and Peter Bothwell, three members of the Court of Master Sommeliers, who, in September 2018, after many years of study and experience, achieved the pinnacle of wine service when they took and passed the notoriously difficult Court of Master Sommelier's Master Sommelier Diploma Examination and were admitted as members of the Court of Master Sommeliers - the world's most elite and prestigious wine organization.

2.      What should have been the beginning of three incredible careers in the wine industry available only to Master Sommeliers, turned into a nightmare when it was alleged that another CMS member and examination proctor had provided answers to the examination to three other candidates.

3.      Instead of conducting a full and fair investigation into the actions of the CMS member, the former CMS board of directors conducted a sham investigation and sham hearing for the singular purpose of stripping Plaintiffs (and the other CMS members who passed the September Exam) of their memberships in the Court of Master Sommeliers.   The sham investigation and sham hearing were concocted to give the appearance of propriety but were a devious maneuver to hide the former CMS board of directors' own misdeeds and misconduct –

COMPLAINT
Case No.: 3:22-cv-5001

conduct that would have been exposed by the due process of a full, fair and transparent investigation and hearing.

4.     The former board of directors were ultimately forced to resign in late 2020 after the board of directors' own misdeeds and misconduct turned into numerous scandals and destroyed the elite organization's once pristine image.

## PARTIES

5.     Plaintiff Gregory Van Wagner is an individual residing in the state of Colorado.

6.     Plaintiff Daniel Pilkey is an individual residing in the state of Illinois.

7.     Plaintiff Peter Bothwell is an individual residing in the state of Connecticut.

8.     Defendant Court of Master Sommeliers, Americas ("CMS"), is a California nonprofit mutual benefit corporation with its principal place of business in Napa County, California. Pursuant to its Bylaws, CMS is governed by its Board of Directors, which is responsible for managing the activities and affairs of CMS and exercising all powers of CMS.

9.     Defendant Devon Broglie, CMS member and former CMS Chairman of the Board of Directors, and former head of the CMS Ethics Committee, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of Texas.

10.     Defendant Matt Stamp, former CMS member and former CMS Director and Vice-Chair, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of California.

11.     Defendant Peter Granoff, CMS member, former CMS Director and Treasurer, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of California.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12.     Defendant Craig Collins, CMS member, former CMS Director and Communications Chair, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of Texas.

13.     Defendant Steven Poe, CMS member, former CMS Director and Examination Co-Chair, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of California.

14.     Defendant Eric Entrikin, CMA member and former CMS Director, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of California.

15.     Defendant Thomas Price, CMS member and former CMS Director, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of Washington.

16.     Defendant Laura Williamson, CMS member and former CMS Director, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of Tennessee.

17.     Defendant Virginia Philip, CMS member, former CMS Director and Vice-Chairman, is, and at all times mentioned herein was an individual residing in the state of Florida.

18.     Defendant Scott Carney, CMS member and former CMS Director, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of New York.

19.     Defendant Randall Bertao, CMS member, former CMS Director, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of California.

COMPLAINT
Case No.: 3:22-cv-5001

20.     Defendant Cameron Douglas, CMS member, former CMS Director, based upon information and belief, is, and at all times mentioned herein was, an individual residing in New Zealand.

21.     Defendant Brett Davis, CMS member, former CMS Director, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of Kentucky.

22.     Defendant Ron Edwards, CMS member, former CMS Director and Education Committee Chair, based upon information and belief, is, and at all times mentioned herein was, an individual residing in the state of Virginia.

23.     Defendant Reggie Narito, former CMS member and former CMS Director, based upon information and belief, is and was at all times relevant to this matter an individual residing in the state of California.

24.     Each Individual Defendant referenced herein above, at all relevant times referenced herein, was a member of the Board of Directors of Court of Master Sommeliers, Americas. On or about December 2, 2020, the Individual Director Defendants were forced to resign en masse,[1] and a new board of directors was elected and assumed office on December 2, 2020.[2]

---

[1] Julia Moskin, *Chairman of Elite Wine Group Resigns Amid Its Sexual Harassment Scandal*, New York Times (November 6, 2020) https://www.nytimes.com/2020/11/06/dining/drinks/court-master-sommeliers-chairman-resigns.html#:~:text=The%20chairman%20of%20the%20Court,in%20the%20court%27s%20highest%20ranks.

Liza B. Zimmerman, *Sexual Harassment Scandal Roils Court Of Master Sommeliers*, Forbes (November 3, 2020) https://www.forbes.com/sites/lizazimmerman/2020/11/03/sexual-harassment-scandal-roils-court-of-master-sommeliers/?sh=f5dbebb6242b

Dana Nigro, Julie Harans, *Court of Master Sommeliers Chairman Steps Down, Group to Restructure After Outcry over Sexual Harassment*, Wine Spectator (November 6, 2020)  https://www.winespectator.com/articles/court-of-master-sommeliers-chairman-steps-down-after-sexual-harassment-scandal

[2] *The Court of Master Sommeliers, Americas Has Elected a New Board of Directors*, VinePair (December 3, 2020), https://vinepair.com/booze-news/court-master-sommeliers-elects-new-board-2020/

COMPLAINT
Case No.: 3:22-cv-5001

25.     Accordingly, the individual Defendants in their capacity as former directors of the Board of Directors of CMS shall hereinafter sometimes be collectively referred to as the "Former CMS Board."

26.     Defendants Court of Master Sommeliers, Americas and Individual Defendants may hereinafter sometimes be referred to collectively as "CMS."

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over the claims asserted herein pursuant 28 U.S.C. § 1332 because the amount in controversy exceeds the value of $75,000.00 exclusive of interest and costs and because there is complete diversity of citizenship between each Plaintiff and each Defendant.

28.     Further, this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a) because the claims arise under acts of Congress relating to trademarks, and supplemental jurisdiction as to the other claims as they are inextricably intertwined with and therefore sufficiently related to the trademark claims.  This Court also has jurisdiction pursuant to 28 U.S.C. § 2201 regarding declaratory judgments.

29.     This Court has personal jurisdiction over the Defendants because CMS is a California non-profit corporation with a principal place of business within this District and because each individual Defendant was, at all times relevant hereto, a member and Director of CMS which positions placed them in contact with the forum for many years, and as Directors, each individual Defendant was responsible for managing the day to day business affairs of the California corporate Defendant during which time they conducted business in California, and purposefully availed themselves of the privilege of conducting activities in California through their directorships at CMS.

30.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because CMS' principal place of business is within this District.

## FACTUAL ALLEGATIONS

31.     The Court of Master Sommeliers, Americas ("CMS") is a California nonprofit organization that touts itself as dedicated to setting the global standard of excellence for beverage service within the hospitality industry.

32.     The process for admission as a member of the Court of Master Sommeliers is arduous, lengthy, and costly.  According to the CMS, there are 172 Master Sommelier members of the Americas chapter, and only 269 Master Sommeliers worldwide.

33.     CMS provides four levels of certification for sommeliers culminating at the highest level with the "Master Sommelier" diploma and title, commonly abbreviated "MS." The four stages involved in attaining membership in the Court of Master Sommeliers: 1) Introductory Sommelier Examination; 2) Certified Sommelier Examination; 3) Advanced Sommelier Examination and 4) Master Sommelier Diploma Examination.

34.     At all times relevant hereto, CMS advertised its sommelier certification programs to consumers like Plaintiffs in all fifty states.

35.     Consumers like Plaintiffs could purchase various products and services from CMS, including its sommelier education and certification programs.

36.     Candidates who pass CMS's examination requirements are admitted as members of CMS permitting their use of the title "Master Sommelier," the initials "MS," and the Master Sommelier pin to signify their status as a master sommelier.

37.     An applicant is invited to take the Master Sommelier Diploma Examination only after years of beverage service experience, significant education and training and passing the three

prior examinations.  On average, becoming a member of the Court of Master Sommeliers from Introductory level to Master level takes 10 years' time, requires constant access to rare wines, global travel, and ultimately costs each aspiring candidate tens of thousands of dollars.

38.     According to CMS, the Master Sommelier Diploma is the highest distinction a professional can attain in the beverage service industry. The Master Sommelier Diploma Examination consists of three sections: a verbal theory examination, an individual blind tasting of six wines in 25 minutes, and a practical service component that focuses on restaurant beverage service and salesmanship. Candidates must receive passing scores in each category in order to be awarded the Master Sommelier Diploma and the highly coveted title of "Master Sommelier."

39.     Candidates for the Master Sommelier Diploma must pass all three sections of the examination within a three-year period. If unsuccessful within the three-year period, candidates must start over. The lengthy examination period reflects the fact that the average candidate requires two to three attempts to pass the full examination. In some cases, candidates require six or more attempts to pass the examination.

40.     In 2012, the full-length motion picture documentary "SOMM" showcased the attempts of four different individuals to pass the arduous and difficult examination. A typical path to the title Master Sommelier Diploma includes advanced academic work in the culinary arts (with a focus on intensive wine classes), advanced study or certification in the hospitality industry, and at least two years of experience as a sommelier in a restaurant.

41.     A level one introductory sommelier can expect to make around $50,000 in salary; level two certified sommelier around $70,000; level three advanced sommelier around $80,000 and master sommeliers tend to make over $150,000 per year.

42.     To become a member of CMS, individuals must meet the requirements of membership set forth in the CMS Amended and Restated Bylaws of the Court of Master Sommeliers Americas (the "Bylaws") which state:

> The Corporation shall have one class of membership, designated as individual. Any natural person who: 1) is dedicated to the purposes of the Corporation; 2) has successfully completed the prescribed course of study and has been awarded the Master Sommelier Diploma; and 3) has read and signed the Court's Code of Ethics and Conduct, the Release and Waiver of Liability attached thereto, and the Court's Alcohol Policy, as adopted and as may be amended by the Board from time to time, shall be eligible for membership. § 2.1.

> Any person eligible and qualified for membership under these Bylaws may be admitted to membership on the approval of the Board or the duly authorized committee of the Board, and upon timely payment of such dues and fees as the Board may fix from time to time. § 2.2.

Exhibit 1.

43.     After each submitting applications to the CMS, Plaintiffs were invited to take the Master Sommelier Diploma Examination in St. Louis, MO on September 3-5, 2018 (the "September Examination").  Each Plaintiff paid the required examination fees.

44.     On or about September 3-5, 2018, CMS offered the practical (service) and tasting portions of the Master Sommelier Diploma Examination. Over 100 candidates took one or both portions of the examination.

45.     As usual, the tasting portion of the September Master Sommelier Diploma Examination was conducted on an individual basis with each candidate having to adequately describe and identify six wines within 25 minutes.

COMPLAINT
Case No.: 3:22-cv-5001

46.     At the conclusion of the September Examination, CMS announced 24 candidates had passed the Master Sommelier examination.[3]

47.     Mr. Van Wagner was one of the 24 candidates who took and passed the September 2018 Master Sommelier examination and was awarded the "Krug Cup" for successfully passing all three portions of the exam on the first try. On or about September 5, 2018, Mr. Van Wagner was awarded the Master Sommelier Diploma, which was presented to him at the CMS induction ceremony following the conclusion of the Examination on or about September 5, 2018, and thereafter signed the CMS Bylaws and Code of Ethics/Conduct, paid his membership dues of $95.00 and was admitted to membership in the CMS.

48.     Mr. Pilkey was one of the 24 candidates who took and passed the September 2018 Master Sommelier examination. On or about September 5, 2018, Mr. Pilkey was awarded the Master Sommelier Diploma, which was presented to him at the CMS induction ceremony following the conclusion of the Examination on or about September 5, 2018, and thereafter signed the CMS Bylaws and Code of Ethics/Conduct, paid his membership dues of $95.00 and was admitted to membership in the CMS.

49.     Mr. Bothwell was one of the 24 candidates who took and passed the September 2018 Master Sommelier examination. On or about September 5, 2018, Mr. Bothwell was awarded the Master Sommelier Diploma, which was presented to him at the CMS induction ceremony following the conclusion of the Examination on or about September 5, 2018, and thereafter signed

---

[3] Press Release, *Court of Master Sommeliers, Americas Welcomes Twenty-Four New Masters to Its Prestigious Ranks*, The Court of Master Sommeliers, Americas (September 5, 2018) https://wineindustryadvisor.com/2018/09/10/master-sommeliers-americas-twenty-four-new

COMPLAINT
Case No.: 3:22-cv-5001

the CMS Bylaws and Code of Ethics/Conduct, paid his membership dues of $95.00 and was admitted to membership in the CMS.

50.    Thus, on or about September 5, 2018, CMS determined that each Plaintiff met the requirements of the Bylaws (*i.e.,* Section 2.1) for membership in the CMS and each Plaintiff was thereby admitted as a member of the CMS, with all rights and privileges attendant to membership.

51.    Upon admission to membership in the CMS, Plaintiffs had a vested property right in the Court of Master Sommeliers, Americas membership and did immediately enjoy the benefits and privileges of their memberships in the Court of Master Sommeliers, Americas which included enhanced reputation, business opportunities obtained from social interaction with members and industry leaders, among other opportunities.

52.    Sometime after the examination, induction ceremony, and admission of the Plaintiffs as members of the CMS, and before October 5, 2018, CMS claimed to have learned that Defendant Narito, a CMS member, director and exam proctor for the September Exam, improperly disclosed confidential test information about the tasting portion of the September Examination via email to three candidates, two of whom also successfully passed the tasting portion and were admitted as CMS members.

53.    Upon learning of Defendant Narito's disclosure of confidential test information to three candidates, CMS took the position that the entire tasting portion of the September 2018 Exam was compromised.

54.    Thereafter, the Former CMS Board of Directors held four meetings regarding Mr. Narito's disclosure on October 5, 8, 10, and 11, 2018.  Exhibit 2.

COMPLAINT
Case No.: 3:22-cv-5001

55.     Section 2.11 of the Bylaws sets forth the procedures for termination and suspension of CMS membership.  The Bylaws also authorize the formation of a special committee.  Exhibit 1.

56.     During the October 5, 2018, meeting the Former CMS Board authorized further investigation into the matter and established a "special advisory committee to oversee continued investigation by legal counsel; to report the results of the investigation to the Board; and to make recommendations to the Board…" Exhibit 2, p. 4

57.     The members of the special advisory committee were Defendants Broglie, Stamp, Collins, Granoff and Poe.

58.     CMS did not engage an independent investigator.

59.     CMS did not have in-house legal counsel.

60.     CMS's outside legal counsel at the time was the law firm Davis Wright Tremaine, LLP.  As CMS's legal counsel, Davis Wright Tremaine, LLP was CMS's agent, and was therefore not "independent."

61.     Astonishingly, in less than seventy-two hours, on October 8, 2018, CMS concluded its "investigation" and decided that the "investigation to date had established conclusively that it was impossible to determine who might have received or spread the information." Exhibit 2, p. 2.

62.     CMS did not interview Mr. Van Wagner in connection with the investigation.

63.     CMS did not interview Mr. Pilkey in connection with the investigation.

64.     CMS did not interview Mr. Bothwell in connection with the investigation.

65.     On information and belief, in connection with its investigation, CMS did not interview even one of the 23 CMS members who passed the tasting portion of the September Examination.

COMPLAINT
Case No.: 3:22-cv-5001

66.     On information and belief, CMS did not interview Mr. Narito in connection with the investigation.

67.     On information and belief, CMS did not review Mr. Narito's emails in connection with the investigation.

68.     On information and belief, Defendant Narito's emails were available to CMS for inspection, but CMS intentionally declined to review them in connection with the investigation.

69.     On information and belief, CMS did not request a single email, text message or phone record from any one of the 23 CMS members who passed the tasting portion of the September Examination in connection with the investigation.

70.     On information and belief, CMS did not conduct a single interview in connection with its investigation.

71.     CMS did not afford the Plaintiffs, or any of the successful 2018 candidates for that matter, even the most fundamental process they were due as members of the CMS, conducting rather what amounted to a sham investigation of Defendant Narito's improper disclosure.

72.     CMS intentionally did not engage an independent investigative firm to conduct the investigation.

73.     CMS intentionally did not conduct a proper investigation of the September 2018 examination in order to avoid the discovery and exposure of improper conduct of the members of the special advisory committee, conduct that likely would have led to suspension or termination of their CMS memberships.

74.     The Former CMS Board members were more interested in protecting their reputation and their CMS memberships then they were with fully and fairly investigating Mr. Narito's improper disclosure of 2018 tasting examination information.

COMPLAINT
Case No.: 3:22-cv-5001

75.     More concerned with their reputation than the truth, instead of engaging an independent investigator, the Former CMS Board authorized a "preliminary budget of $100,000 to address legal and public relations costs related to the matter of the September 2018 Master examination."   Exhibit 2, p. 9.   Indeed, CMS engaged a reputation management, crisis communications and professional development expert.

76.     Following its sham investigation, the Former CMS Board of Directors, without affording the Plaintiffs the process they were due as members of the CMS, declared the 2018 tasting portion of the Examination compromised and invalidated that portion of the examination.

77.     On October 9, 2018, Defendant Broglie sent a letter to CMS members stating that the board had "received a report from outside legal counsel that a member of the Court of Master Sommeliers, Americas disclosed confidential information pertinent to the tasting portion of the 2018 Master Sommelier Diploma Examination prior to the examination" and issued a press release titled: "Court of Master Sommeliers, Americas Board of Directors Takes Unanimous Actions to Preserve Integrity of Examination Process" Exhibit 3.

78.     On October 9-10, 2018, major media outlets published articles detailing what was being referred to as a "cheating scandal" and naming Plaintiff Pilkey by name as being caught in the "scandal."[4]

---

[4] Esther Mobley, *Somm scandal: Revelations of cheating at master sommelier examination lead to the invalidation of 23 new certifications*, San Francisco Chronicle (October 9, 2018) https://www.sfchronicle.com/wine/article/Somm-scandal-Revelations-of-cheating-at-master-13294233.php

Courtney Schiessl Magrini, *Cheating Scandal Invalidates Latest Master Sommelier Tasting Exam*, Seven Fifty Daily (October 9, 2018) https://daily.sevenfifty.com/cheating-scandal-invalidates-latest-master-sommelier-tasting-exam/

Joseph Hernandez, *Scandal in wine world: 23 new Master Sommeliers stripped of titles after cheating discovered*, Chicago Tribune (October 10, 2018)  https://www.chicagotribune.com/dining/ct-food-wine-court-of-master-sommeliers-20181009-story.html

COMPLAINT
Case No.: 3:22-cv-5001

79.     On October 10, 2018, Plaintiffs were notified individually by telephone of CMS's decision to invalidate the September Examination.

80.     Under the Bylaws, memberships can be suspended or terminated for "good cause" which is defined, in part, as a member's "failure to meet requirements of 2.1."  Exhibit 1.

81.     Without affording the Plaintiffs the process they were due as members of the CMS, Defendants suspended the Plaintiffs' memberships taking the position that they failed to meet the requirements of § 2.1.  *Id.*

82.     One of the requirements of membership under § 2.1 is having been awarded the Master Sommelier Diploma.  *Id*. It is unquestionable that, even after the sham investigation and illegal invalidation of the Exam, Plaintiffs met this requirement as they had each been "awarded Master Sommelier Diploma[s]" and the Plaintiffs' Diplomas were never rescinded or canceled.

83.     Invalidating the Exam results did not negate the fact that Plaintiffs were "awarded Master Sommelier Diploma[s]" which have never been rescinded or cancelled. That fact exists and cannot be undone.  Therefore, the Former CMS Board reasonably must have looked to other factual bases to establish good cause for taking away Plaintiffs' property rights, *e.g.*, individual cheating or improper conduct – something it did not do.

84.     As a member of the CMS, the Former CMS Board owed to Mr. Van Wagner a good faith individual fair due process under the Bylaws and California law.

85.     As a member of the CMS, the Former CMS Board owed to Mr. Pilkey a good faith individual fair due process under the Bylaws and California law.

86.     As a member of the CMS, the Former CMS Board owed to Mr. Bothwell a good faith individual fair due process under the Bylaws and California law.

87.     Despite conducting no hearing on the propriety of suspending Plaintiffs' CMS memberships, on October 10, 2018, CMS announced that the 23 CMS members' memberships were suspended and that the affected members would have two chances to re-take the Master Sommelier Diploma Examination, on a date later in 2018 and another in the spring or summer of 2019.  Exhibit 4.

88.     On October 10, 2018, Mr. Pilkey, along with others CMS members, sent a letter to CMS demanding CMS records and information, and transparency regarding the investigation and decision to invalidate the exam results (the "Pilkey Letter.")  Exhibit 5.

89.     The Bylaws, §2.7, provides members with the right to access CMS records.  Exhibit 1.

90.     On October 11, 2018, Defendant Broglie responded to the Pilkey Letter without providing the requested records, information or transparency, and instead shamelessly admonished the CMS member-signors, stating: "…questioning our collective diligence and thoughtfulness around due process is misplaced, as is doubting our understanding of the implications of our decisions on each of you and the Court."  Exhibit 5, p.5-6.

91.     On October 12, 2018, only days after the sham investigation began and concluded, CMS, through its legal counsel, sent each Plaintiff near identical letters informing them of the results and the decision of CMS to invalidate the exam, strip them of their property rights, rewards of their achievements and suspend their memberships in the CMS.  Exhibit 6.

92.     CMS did not hide the fact that its investigation was nothing more than a sham and a denial of the Plaintiffs' membership rights to a fair and due process; indeed, in its October 12, 2018 letter to each Plaintiff, CMS admitted that the suspensions of Plaintiffs' CMS memberships were a predetermined conclusion, stating: **"[o]nce the suspension of your membership is**

COMPLAINT
Case No.: 3:22-cv-5001

**effective on November 13**, your status within the Court will revert to Master candidate. You will not be able to use the Master Sommelier title, to which the Court owns all rights, or wear the Master Sommelier pin while you are a Master candidate." (Emphasis added.)  Tellingly, CMS did not say: "*if* the suspension of your membership is effective on November 13…"  *Id.*

93.     In its October 23, 2018, letter to the Plaintiffs, CMS doubled down and stated unequivocally: "…As previously stated, the suspension of your membership is in no way intended to reflect on your preparation for the examination or your conduct during the time as Master Sommelier…" Exhibit 7. Again, CMS did not say "*if* your membership is suspended …"

94.     By its own admissions, the Former CMS Board had reached its decision to suspend the Plaintiffs' CMS memberships even prior to the date notice of hearing at which the suspension was to be decided was provided to the Plaintiffs.  At no time prior to October 12 or October 23 had the Plaintiffs been afforded full and fair due process in connection with the suspension of their CMS memberships, which the CMS had admittedly suspended without notice, hearing or any other reasonable form of due process as required by the Bylaws and California law.

95.     Additionally, on October 18, 2018, Plaintiff Bothwell demanded records of all CMS meetings since September 4, 2018, and a copy of the formal investigation into Defendant Narito's disclosure.  Plaintiff Bothwell was provided only drafts of highly redacted meeting minutes from a CMS attorney who claimed certain information was "attorney client privileged" despite the fact that as a member of CMS, he was entitled to such information and covered by the claimed attorney client privilege.  Exhibit 8.

96.     CMS' refusal to provide Mr. Bothwell with the requested investigative records and information denied him, and the other Plaintiffs any chance at a fair process and hearing as they had no meaningful opportunity to understand the facts of the investigation upon which their

COMPLAINT
Case No.: 3:22-cv-5001

suspensions were based, and therefore no meaningful opportunity to call witnesses, analyze facts and argue their cases.

97.     The sham hearing was held on November 4 and 5, 2018 and as it had already decided, the Former CMS Board now publicly pronounced the suspension of Plaintiffs' CMS memberships.

98.     Despite the requirements of a good faith and a fair investigative and hearing process, CMS's actual process was anything but – it was a predetermined outcome based on a sham investigation and bogus hearing—there was no process.

99.     Plaintiffs spent many years of their lives and tens of thousands of dollars each preparing for the September Exam and CMS spent mere hours "investigating" and invalidating the exam results.

100.    CMS' sham investigation is even more appalling in light of the fact that Plaintiffs had a vested property right in their memberships in the CMS and invalidating the Exam would not simply invalidate the Exam but would strip Plaintiffs of their vested property rights.

101.    Under the Bylaws, even after the sham investigation and decision to invalidate the Exam, Plaintiffs qualified (and to this day qualify) for membership under Sections 2.1 and 2.2 of the Bylaws because Plaintiff continue to meet all the requirements of membership.  Exhibit 1.

102.    Defendants CMS and Former CMS Board failed to act in good faith and failed to investigate each Plaintiff CMS member subject to potential suspension or provide each Plaintiff CMS member with an individual process and hearing.  Instead, Defendants CMS and the Former CMS Board improperly investigated and suspended the memberships of a group of CMS members collectively.

103.    As directors of CMS, the Former CMS Board member Defendants owed a fiduciary duty to Plaintiffs to act in the best interests of all members, including Plaintiffs, not just a select few members.  Conducting a sham investigation and bogus hearing was not in the best interests of Plaintiffs or CMS, but rather only in the interest of a few directors who did not want an investigation to reveal their misconduct and misdeeds.

104.    Other CMS members, unrelated to the September Examination, implored Defendants CMS and the Former CMS Board to conduct a full and fair investigation, and to not suspend the innocent members, including Plaintiffs – which pleas were summarily dismissed and ignored by the Former CMS Board.

105.    Defendant members of the Former CMS Board breached their fiduciary duties and denied Plaintiffs due process in an attempt to save their positions of power. Defendants intentionally conducted a sham investigation in order to avoid discovery of their misdeeds and to protect their positions of power within the CMS Organization.

106.    Defendant Narito intentionally and maliciously breached his fiduciary duty for his own selfish personal benefit, by providing to three individual candidates answers to the tasting portion of the September Examination.  None of the Plaintiffs received the Defendant Narito information, from Defendant Narito or otherwise.

107.    Mr. Narito engaged in despicable conduct which was carried on with a willful and conscious disregard of the rights of Plaintiffs.

108.    Plaintiffs' unlawful suspension from the CMS has caused them irreparable professional harm, as well as financial, and commercial harm. CMS' unlawful suspensions are denying Plaintiffs the right they have earned to participate in CMS events, to earn compensation commensurate with being a Master Sommelier and to have the opportunities that come with the

title Master Sommelier. CMS' suspension has denied Plaintiff the right to the platform and the public exposure provided by being a member of the CMS. The CMS' suspension of Plaintiffs has denied them the opportunity to hone and maintain their wine and beverage skills by participating in CMS events. The CMS' suspension of Plaintiffs has cost them endorsement and sponsorship opportunities. The CMS' unlawful suspensions of Plaintiffs have damaged Plaintiffs goodwill and caused them substantial reputational harm, being cast as part of a "cheating scandal" and having their Master Sommelier titles stripped.

109. The Former CMS Board individual Defendants acted willfully, with malice and engaged in despicable conduct which was carried on with a willful and conscious disregard of the rights of the Plaintiffs and that subjected each Plaintiff to cruel and unjust hardship in conscious disregard of each Plaintiff's rights.

110. Defendants' unlawful conduct has caused Plaintiffs irreparable, financial and commercial harm that has denied them income and opportunities in the past and Plaintiffs will continue to be financially and irreparably harmed.

111. Defendants' unlawful actions have depressed Plaintiffs' earnings and have decreased their earning opportunities in an amount of many hundreds of thousands to millions of dollars each.

## TRADEMARK ALLEGATIONS

112. CMS has two federal registrations relating to the term "Master Sommelier:" 4,473,561 and 2,384,665.

113. CMS' 2,384,665 logo registration specifically disclaims any rights to the term "master sommelier." Exhibit 9.

114.    CMS' 4,473,561 registration for "Master Sommelier" covers "[s]ommelier services, namely, providing advice on wine and wine and food pairing." Exhibit 9.

115.    CMS does not have a trademark registration for the term "MS."

116.    The generic class of the services covered by Trademark Registration No. 4,473,561 is "Sommelier services, namely, providing advice on wine and wine and food pairing."

117.    The term "master sommelier" is understood by the relevant public to refer to the generic class of services covered by Trademark Registration No. 4,473,561.

118.    At all relevant times — before, at the time, and after Respondent filed its application Serial No. 85773147 on November 6, 2012, which matured into Trademark Reg. No. 4,473,561 for "MATER SOMMELIER" — the term "master sommelier" has been used as a common verb and/or noun in a generic manner for high level sommelier services.

119.    Defendant has admitted that the term "master sommelier" is a generic name for its services. Specifically, during the prosecution of Trademark Reg. No. 2,384,665, Defendant disclaimed exclusive rights to the term "master sommelier" apart from the mark as a whole, which constitutes an admission that "master sommelier" is unregistrable as it is generic for the services covered by its application. Exhibit 9.

120.    Defendant has admitted that the term "sommelier" is a generic name for its services. Specifically, during the prosecution of Trademark Reg. No. 4,473,561, Defendant disclaimed exclusive rights to the term "sommelier" apart from the mark as a whole, which constitutes an admission that "sommelier" is unregistrable as it is generic for the services covered by its application. Exhibit 9.

121.    The term "master sommelier" is now and for many years has been used as a generic term for services that feature high level sommelier services.

COMPLAINT
Case No.: 3:22-cv-5001

122.    The term "master sommelier" is incapable of distinguishing Defendant CMS' claimed services from sommelier services of others that also are highly skilled master sommeliers.

123.    On or about October 12, 2018, CMS instructed, via letter, that "[o]nce the suspension of your membership is effective on November 13, your status within the Court will revert to Master candidate. You will not be able to use the Master Sommelier title, to which the Court owns all rights, or wear the Master Sommelier pin while you are a Master candidate." Exhibit 6.

124.    On or about June 21, 2019, CMS filed a lawsuit against Plaintiff Pilkey alleging that he was infringing on CMS' registered trademarks.  The lawsuit was dismissed for lack of personal jurisdiction over Mr. Pilkey.  *Court of Master Sommeliers, Americas v. Pilkey*, United States District Court of the Norther District of California Case No.: 3:19-cv-03620-SK.

125.    The titles of each of the four levels of CMS sommeliers are generic: "intro," "certified," "advanced," and "master."

126.    The term "master sommelier" is generic and not entitled trademark protection.

127.    Defendant CMS uses the term "master" in a generic way: "*The Court of Master Sommeliers was established in 1977 to promote excellence in hotel and restaurant beverage service. Though its members worldwide come from diverse backgrounds and experiences, they share a proven **mastery** of the art, science, and history that informs a sommelier's work.*" (emphasis added.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FIRST CLAIM FOR RELIEF
### Breach of Contract – All Plaintiffs against Defendant CMS

128.    Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-111 as if fully set forth herein.

129.    Defendant CMS is bound by its Bylaws.

130.    Upon being awarded the Master Sommelier Diploma on September 5, 2018, each Plaintiff expressly agreed to be bound by the Bylaws of the CMS and the CMS Code of Ethics/Conduct (collectively, the "CMS Agreements").

131.    Specifically, each Plaintiff agreed to and accepted the benefits of the CMS Agreements afforded all Members of the CMS, including, but not limited to a full, fair and independent investigation of any claims of improper conduct by the Plaintiffs or any of them; and, following their admission to membership, unfettered access to the records of the CMS.

132.    While Plaintiffs are now labeled "suspended" members of the CMS, each are, and at all times relevant herein were, nevertheless a party to the CMS Agreements, which agreements have not been revoked, cancelled, or terminated and, therefore, remain in effect as to the Plaintiffs.

133.    Defendant breached the CMS Agreements by failing and refusing to conduct a fair and impartial investigation of the claims it had leveled against the Plaintiffs, refusing each Plaintiff access to the records of the CMS, and refusing Plaintiffs access to the DWT investigation, which it improperly cloaked in the "attorney-client privilege."

134.    Plaintiffs performed their obligations under the Agreements.

135.    All conditions required for Defendant CMS' performance had occurred.

136.    Plaintiffs were damaged as a result of Defendants' breaches.

137.    Defendants' breaches were the proximate cause of Plaintiffs' damages.

COMPLAINT
Case No.: 3:22-cv-5001

## SECOND CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing – All Plaintiffs against Defendant CMS

138.    Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-111 and 128-137 as if fully set forth herein.

139.    Upon being awarded the Master Sommelier Diploma, Plaintiffs and Defendant entered into the CMS Agreements.

140.    Plaintiffs performed or honored all, or substantially all of the significant actions that the Agreements obligated them to perform or honor.

141.    All conditions required for Defendant CMS' performance had occurred.

142.    As set forth above, in violation of the Agreements, Defendant CMS acted in bad faith in conducting a sham investigation for the purpose of taking Plaintiff's property rights.

143.    In doing so, Defendant CMS did not act fairly and in good faith.

144.    Plaintiffs were harmed by Defendant CMS' conduct.

145.    Defendants' breaches were the proximate cause of Plaintiffs' damages.

## THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty – All Plaintiffs against Former CMS Board Individual Defendants.

146.    Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-111 and 128-145 as if fully set forth herein.

147.    Defendants owed to Plaintiffs fiduciary duties including the duties of loyalty and good faith.

148.    Consistent with the duties owed to Plaintiffs and in light of the fact that the results of the CMS investigation could lead to the revocation of the Plaintiff's property rights in their

memberships in the CMS, Defendants owed the Plaintiffs a fiduciary duty to conduct reasonable, independent and fair investigation of the 2018 CMS Examination.

149.    Defendants breached their duties by intentionally failing to conduct a reasonable, independent, and fair investigation of the 2018 CMS Examination.

150.    Plaintiffs were damaged as a result of Defendants' breaches.

151.    Defendants' breaches were the proximate cause of Plaintiffs' damages.

152.    Defendants' breaches were intentional, oppressive, fraudulent, and malicious.

## FOURTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty – All Plaintiffs against Defendant Narito

153.    Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-111 and 128-152 as if fully set forth herein.

154.    Defendant Narito was a member and director of the CMS at all times relevant to the allegations herein.

155.    Defendant Narito was an exam proctor for the 2018 Exam.

156.    As a director and an exam proctor, Defendant Narito was in a position of trust and control over the Plaintiffs and therefore owed to them a fiduciary duty.

157.    Defendant Narito breached his duty to Plaintiffs when he intentionally shared answers to the Exam with three examinees.

158.    Defendant Narito's breach proximately caused damages to Plaintiffs in the form of invalidation of the Exam, resulting lost membership in the CMS, lost opportunities, income, reputational damage, prestige and emotion distress.

159.    Plaintiffs were damaged as a result of Defendant Narito's breaches.

160.    Defendant Narito's breaches were the proximate cause of Plaintiffs' damages.

161.    Defendant Narito's breaches were intentional, oppressive, fraudulent, and malicious.

### FIFTH CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law California Business and Professions Code § 17200, *et seq.* – All Plaintiffs against Defendant CMS**

162.    Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-111 and 128-161 as if fully set forth herein.

163.    California Business and Professions Code § 17200 *et seq.* (the Unfair Competition Law "UCL") prohibits any unlawful, unfair or fraudulent business act or practice, any unfair, deceptive, untrue or misleading advertising, and any violation of Business and Professions Code § 17500 *et seq.*

164.    The UCL imposes strict liability. Plaintiffs need not prove that Defendant CMS intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

165.    Defendant CMS engaged in ***unlawful*** business practices.

166.    A practice is "unlawful" if it violates a law other than the UCL.

167.    The violation of any law, including state statutes and common law doctrines, constitutes an "unlawful" business practice under the UCL.

168.    As set forth herein, Defendant CMS acted unlawfully by, among other things, breaching the CMS Agreements, breaching the duty of good faith and fair dealing and by violating California Corporations Code § 5341 which requires that "[a]ny expulsion, suspension or termination must be done in good faith and in a fair and reasonable manner."

169.    Defendant CMS engaged in ***unfair*** business practices.

170.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

171.    CMS' actions constitute "unfair" business practices because, as alleged above, CMS purposely conducted a sham investigation in bad faith in violation of the Bylaws and California law.  The sham investigation was nothing more than fabricated process devoid of any substance. CMS' acts and practices offended the basic tenets of good faith and due process requirements of the CMS Bylaws and established norms of corporate conduct; CMS engaged in immoral, unethical, oppressive, and unscrupulous activities that were substantially injurious to Plaintiffs.

172.    Plaintiffs were harmed as a result of Defendant CMS' actions.

173.    The harm to Plaintiffs outweighs any conceivable utility of CMS' conduct towards the Plaintiffs. As alleged above, there were reasonably available alternatives to further CMS' legitimate business interests other than the unfair, bad faith and illegal conduct described herein.

174.    Pursuant to the UCL, Plaintiffs are entitled to injunctive relief and order of restitution to Plaintiffs of their property rights in the form of their memberships in CMS.

## SIXTH CLAIM FOR RELIEF
**(Declaratory Judgment of Non-Infringement under the Lanham Act – All Plaintiffs against Defendant CMS)**

175.    Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-30 and 112-127 as if fully set forth herein.

176.    CMS has two federal registrations relating to the term "Master Sommelier:" 2,384,665 and 4,473,561.

COMPLAINT
Case No.: 3:22-cv-5001

177.   Plaintiff's, by virtue of their personal and professional achievements in the field of beverage service are master sommeliers.

178.   Defendant CMS has expressly directed Plaintiffs to cease their use of the term "master sommelier" and the abbreviated "MS" in connection with sommelier services.

179.   In the October 12, 2018 letter sent to Plaintiffs, CMS stated: "You will not be able to use the Master Sommelier title, to which the Court owns all rights, or wear the Master Sommelier pin …"

180.   Defendant CMS has claimed that Plaintiff Pilkey's use of the term "master sommelier" and the abbreviated "MS" infringes the CMS Marks and filed a lawsuit against him to prevent his use of the Marks.  *See¸ Court of Master Sommeliers, Americas v. Pilkey*, United States District Court of the Norther District of California Case No.: 3:19-cv-03620-SK.

181.   Plaintiffs do not currently use the terms "master sommelier" and "MS" in connection with their sommelier services out of fear that they will be sued and financially harmed by Defendant CMS.

182.   But for the threat of being sued by Defendant CMS and the resulting financial devastation (as in the Pilkey case), Plaintiffs would use the term "master sommelier" to describe services they offer in connection with sommelier services.

183.   There exists a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

184.   Plaintiffs seek a declaratory judgment declaring that their use of the term "master sommelier" and "MS" does not infringe on any of Defendant CMS' trademarks. That Plaintiffs' use of the term "master sommelier" and "MS" is not likely to cause confusion, mistake, or deception, or reverse confusion, mistake, or deception with Plaintiff's trademarks; and that

COMPLAINT
Case No.: 3:22-cv-5001

Plaintiffs can use the term "master sommelier" in connection with sommelier and beverage services.

### SEVENTH CLAIM FOR RELIEF
**(Cancellation of 2,384,665 and 4,473,561 Registrations under 15 U.S.C. § 1119 – All Plaintiffs against Defendant CMS)**

185.   Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-30; 112-127 and 175-184 as if fully set forth herein.

186.   Section 37 of the Lanham Act, 15 U.S.C. § 1119, empowers this Court to order the cancellation of a federally registered trademark upon "…any action involving a registered mark … with respect to the registrations of any party to the action."

187.   Defendant CMS' U.S. Trademark Registration Nos. 2,384,665 and 4,473,561 are invalid, unenforceable and subject to cancellation in whole or in part pursuant to 15 U.S.C. §§ 1119 and 1064.

188.   U.S. Trademark Registration Nos. 2,384,665 and 4,473,561 should be canceled in whole or in part pursuant to 15 U.S.C. § 1064(3) because the term "master sommelier" as registered by Defendant CMS has become generic for the services identified in the registration in that the primary significance of "master sommelier" to the relevant public is generally known to be a high level of professional ability and aptitude with respect to sommelier services.

189.   Plaintiffs have been, and will continue to be damaged, by continued registration by Defendant CMS' U.S. Trademark Registration Nos. 2,384,665 and 4,473,561, in that Plaintiffs have been and are involved in the sommelier profession and which Plaintiffs have a valid and legal right to use of the term "master sommelier." Plaintiffs are likely to be damaged by continued registration of that term in that the effect of such registration tends to impair, and has impaired, Plaintiffs right to fair use of the term as a generic designation of the services they provide.

190.    Plaintiffs are entitled to a judgment that Defendants' marks are invalid and unenforceable, and cancellation of Defendants' registrations are proper, including under 15 U.S.C. § 1119 and 15 U.S.C. § 1064.

191.    The mark that is the subject of the 2,384,665 and 4,473,561 Registrations are not entitled to protection as a trademark, as it has become a generic reference to a highly skilled sommelier within the minds of the relevant public. The "master sommelier" mark merely conveys information about the nature or class of a highly skilled beverage service professional and/or sommelier and broadly suggests the basic nature of highly skilled beverage service professionals.

192.    Plaintiffs have been and continue to be damaged by the 2,384,665 and 4,473,561 Registrations, as Defendant CMS claims Plaintiffs are not entitled to use the words "master sommelier" to describe themselves in connection with their work in the beverage industry.

193.    Plaintiffs are entitled to an order, pursuant to 15 U.S.C. § 1119, directing the United States Patent and Trademark Office to cancel the 2,384,665 and 4,473,561 Registrations, as the Registrations are generic and not otherwise protectable as a trademark.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Judgment All Plaintiffs against Defendant CMS)

194.    Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1-111 and 128-174 as if fully set forth herein.

195.    The CMS Bylaws specifically provide that "[a]ny natural person who: 1) is dedicated to the purposes of the Corporation; 2) has successfully completed the prescribed course of study and has been awarded the Master Sommelier Diploma; and 3) has read and signed the Court's Code of Ethics and Conduct, the Release and Waiver of Liability attached thereto, and the

COMPLAINT
Case No.: 3:22-cv-5001

Court's Alcohol Policy, as adopted and as may be amended by the Board from time to time, shall be eligible for membership. § 2.1.

196.    Plaintiffs satisfied all requirements of section 2.1 of CMS' Bylaws and were in fact admitted as members on the approval of the Board after timely payment of the dues set by the Board.

197.    As set forth above, after conducting a sham investigation and hearing, and not affording Plaintiffs due process as each is entitled to pursuant to CMS' Bylaws, effective November 13, 2018, CMS suspended Plaintiffs' CMS memberships, reverted their status to "Master candidate" and prohibited Plaintiffs from using the Master Sommelier title, or wear the Master Sommelier pin while they are Master candidates.

198.    Plaintiffs are entitled to seek a declaration of their rights under the Agreements pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201.

199.    As set forth above, an actual controversy exists between the parties.

200.    Plaintiffs seek declaratory relief declaring that Plaintiffs' memberships in the CMS are not suspended or terminated, and that Plaintiffs continue to be members of CMS, entitled to all the privileges and benefits of CMS membership.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.  As to the First Claim for Relief: Judgment against CMS for breach of contract in an amount to be proven at trial plus pre- and post-judgment interest;

2.  As to the Second Claim for Relief: Judgment against CMS for breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial plus pre- and post-judgment interest;

3.  As to the Third Claim for Relief: Judgment against Former CMS Board Individual Defendants for breach of fiduciary duty in an amount to be proven at trial and punitive damages in an amount to deter future unlawful conduct;

4.  As to the Fourth Claim for Relief: Judgment against Defendant Narito for breach of fiduciary duty in an amount to be proven at trial and punitive damages in an amount to deter future unlawful conduct;

5.  As to the Fifth Claim for Relief: Judgment against CMS for violation of California's Unfair Competition Law and injunctive relief and an order of restitution to Plaintiffs of their property rights in the form of their memberships in CMS;

6.  As to the Sixth Claim for Relief: Declaratory Judgment that Plaintiffs' use of "master sommelier" and "MS" are not likely to cause confusion, mistake or deception, or reverse confusion, mistake or deception with Defendant CMS' marks;

7.  As to the Seventh Claim for Relief: Cancelling, under Section 37 of the Lanham Act, 15 U.S.C. § 1119, Defendant CMS' trademark Registration No. 2,384,665, and Registration No. 4,473,561;

8.  As to the Eighth Claim for Relief: Declaratory Judgment that Plaintiffs' CMS memberships are not suspended or terminated, and Plaintiffs continue to be members of CMS, entitled to all the privileges and benefits of CMS membership.

9.  Any other relief that this Court deems appropriate including costs and attorneys' fees as permitted by law.

DATED this 1st day of September, 2022.

LASZLOLAW
/s/ Michael J. Laszlo
Michael J. Laszlo (CA#327203)
2595 Canyon Boulevard, Suite 210
Boulder, CO 80302
Telephone: (303) 926-0410
FAX: (303) 443-0758
mlaszlo@laszlolaw.com

Law Offices of Ravi Mehta
/s/ Ravi Mehta
Ravinder Mehta (CA #113805)
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
916-486-1955
rmehta@capitol-advocates.com

COMPLAINT
Case No.: 3:22-cv-5001