UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY VAN WAGNER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COURT OF MASTER SOMMELIERS, AMERICAS, et al.,<br><br>Defendants. | Case No. 22-cv-05001-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND STRIKE; AND DENYING NARITO'S MOTION TO DISMISS**<br><br>Docket Nos. 56, 57 |

Plaintiffs Gregory Van Wagner, Daniel Pilkey, and Peter Bothwell have filed suit against (1) a nonprofit organization known as the Court of Master Sommeliers, Americas ("CMS"), and (2) fifteen individuals who were formerly members of the CMS Board of Directors.[1] In 2018, Plaintiffs passed an examination administered by CMS. As a result, they were certified as "Master Sommeliers" and became members in the organization. Subsequently, CMS learned that there was a cheating incident related to the examination. According to Plaintiffs, they were not involved in the cheating incident. CMS, however, determined that all test results for the 2018 examination would be invalidated. Plaintiffs assert that CMS made this decision without conducting a fair and impartial investigation. Plaintiffs thus filed suit.

Currently pending before the Court are two motions. One motion has been filed by all individual defendants other than Mr. Narito (collectively, "Individual Defendants"). The other motion has been filed by Mr. Narito. In both motions, the main challenge is to the claims for breach of fiduciary duty ("BOFD"). Previously, one of the former board members, Mr. Stamp,

---

[1] Those individuals are: Devon Broglie, Matt Stamp, Peter Granoff, Craig Collins, Steve Poe, Eric Entrikin, Thomas Price, Laura Williamson, Virginia Philip, Scott Carney, Randy Bertao, Cameron Douglas, Brett Davis, Ron Edwards, and Reggie Narito.

successfully contested the BOFD claim that had been asserted against him, but the Court gave Plaintiffs leave to amend. *See* Docket No. 40 (minutes).

Having considered the parties' briefs as well as the oral argument of counsel, the Court hereby **GRANTS** the Individual Defendants' motion to dismiss but **DENIES** the motion to strike as moot. Mr. Narito's motion to dismiss is **DENIED**. Plaintiffs have leave to amend the BOFD claim as asserted against the Individual Defendants.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the operative first amended complaint ("FAC"), Plaintiffs allege as follows.

CMS is a California nonprofit mutual benefit corporation. *See* FAC ¶ 31. It has a Board of Directors. *See* FAC ¶ 55. The Individual Defendants and Mr. Narito were all directors during the relevant period of events.

CMS "touts itself as dedicated to setting the global standard of excellence for beverage service within the hospitality industry." FAC ¶ 31. CMS provides four levels of certification for sommeliers. An examination is given for each level. The highest level is for "Master Sommelier." *See* FAC ¶ 33. A Master Sommelier is admitted as a member of CMS. *See* FAC ¶ 36. Worldwide, there are only 269 Master Sommeliers. In the United States, there are 172. *See* FAC ¶ 32. Master Sommeliers tend to make over $164,000 a year. *See* FAC ¶ 41 (noting that individuals who have lower levels of certification tend to make less – between $50,000 and $80,000).

The Master Sommelier examination "consists of three sections: a verbal theory examination, an individual blind tasting and identification of six wines in 25 minutes, and a practical service component that focuses on restaurant beverage service and salesmanship." FAC ¶ 38. Candidates "must pass all three sections . . . within a three-year period. . . . The lengthy examination period reflects the fact that the average candidate requires two to three attempts to pass the full examination." FAC ¶ 39.

Plaintiffs each took the Master Sommelier examination in September 2018. *See* FAC ¶ 43. At the examination, CMS offered the practical and tasting sections. *See* FAC ¶ 44. At the conclusion of the examination, CMS announced that 24 candidates, including Plaintiffs, had

passed. Plaintiffs were also admitted as members of CMS. *See* FAC ¶¶ 46-50.

Sometime before October 5, 2018, "CMS claimed to have learned that [Mr.] Narito, a CMS member, CMS Director[,] and exam proctor for the September 2018 tasting [section] improperly disclosed confidential test information about the tasting portion . . . via email to select and specific candidates, two of whom also successfully passed the tasting portion and were admitted as CMS members." FAC ¶ 52. The CMS Board held four meetings, specifically, on October 5, 8, 10, and 11, 2018. *See* FAC ¶ 56. During the October 5 meeting, the Board "authorized further investigation into the matter and established a 'special advisory committee to oversee continued investigation by legal counsel; to report the results of the investigation to the Board; and to make recommendations to the Board.'" FAC ¶ 58. The members of the special advisory committee were Mr. Brogie, Mr. Stamp, Mr. Collins, Mr. Granoff, and Mr. Poe. *See* FAC ¶ 59. Legal counsel who conducted the investigation was the firm Davis Wright Tremaine, LLP ("Davis Wright"). According to Plaintiffs, because Davis Wright was already CMS's outside legal counsel prior to the investigation, it was not independent. *See* FAC ¶ 62.

Just three days later, on October 8, 2018, CMS concluded the investigation, stating that the "'investigation to date had established conclusively that it was impossible to determine who might have received or spread the information.'" FAC ¶ 63. The investigation was inadequate. For example, none of the CMS members who had passed the tasting portion of the September 2018 examination (including Plaintiffs) were interviewed. *See* FAC ¶¶ 65-68. Also, CMS did not ask any of these members for emails, texts, or phone records. *See* FAC ¶ 71. Mr. Narito was not interviewed either, nor were his emails reviewed – even though Mr. Narito's employer offered his work emails to CMS for review. *See* FAC ¶¶ 69-70.

According to Plaintiffs, CMS did not conduct a reasonable, independent investigation because doing so "would have revealed the cheating and sexual misconduct in which the CMS Board and CMS Members had engaged since at least 2009." FAC ¶ 74; *see also* FAC ¶ 77 (alleging that "CMS intentionally did not conduct a proper investigation . . . in order to avoid the discovery and exposure of past and ongoing improper sexual misconduct of and cheating by the CMS, its Board and its members, conduct that would have led to embarrassment and suspension or

termination of the Board and CMS members' CMS memberships"). *See, e.g.*, FAC ¶¶ 84-86 (alleging that there was a cheating incident in 2009 on the theory section of the examination, and that some of the candidates who passed that examination went on to become Board members, including Mr. Broglie); FAC ¶¶ 90-91 (alleging that Mr. Stamp "had inappropriate sexual relationships with two women who took the 2018 Exam" and that Mr. Broglie "had an inappropriate sexual relationship with a junior-level CMS candidate whom he was mentoring). Plaintiffs maintain that

> [a] full and fair investigation by the CMS and its Board would have required . . . it to engage an independent third party investigator to conduct the investigation of the practices of the CMS relative to the MS Exam, applications for the MS Exam, relationships between the applicants and the CMS Board members and CMS members generally, relationships between the CMS and CMS Members and the wine industry, process for the selection of CMS members to serve as "proctors" or administrators of the MS Exam, the MS Exam protocols for day of Exam procedures and sequestration of candidates.

FAC ¶ 78 (emphasis added).

Plaintiffs contend that, "[h]ad CMS and the CMS Board conducted an independent investigation, the results would have been available to the CMS members, including Plaintiffs, who would have then had an opportunity to review the results of the investigation and fully prepare for and have a full and fair hearing based thereon." FAC ¶ 119. Plaintiffs also allege that

> CMS' unlawful suspensions have and continue to deny Plaintiffs the right they have earned to participate in CMS events, to earn compensation commensurate with being a Master Sommelier and to have the opportunities that come with the title Master Sommelier. CMS' suspension has denied Plaintiff the right to the platform and the public exposure provided by being a member of the CMS. The CMS' suspension of Plaintiffs has denied them the opportunity to hone and maintain their wine and beverage skills by participating in CMS events. The CMS' suspension of Plaintiffs has cost them endorsement and sponsorship opportunities. The CMS' unlawful suspensions of Plaintiffs have damaged Plaintiffs goodwill and caused them substantial reputational harm, being cast as part of a "cheating scandal" and having their Master Sommelier titles stripped.

FAC ¶ 129.

Based on, *inter alia*, Plaintiffs have asserted a number of claims against CMS, including,

*e.g.*, breach of contract. As to the Individual Defendants and Mr. Narito, however, Plaintiffs assert only claims for BOFD.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[2] *Id.* (internal quotation marks omitted).

### B. Individual Defendants' Motion to Dismiss and Strike

The gist of Plaintiffs' claim against the Individual Defendants is that they breached their

---

[2] In their motion to dismiss, the Individual Defendants repeatedly use the phrase "more plausible than not." *See, e.g.*, Ind. Defs.' Mot. at 11-2 (arguing, *e.g.*, that "[i]t is more plausible than not that the time and cost of such investigation [as Plaintiffs claim should have been done] would not have been viable under the circumstances"). This is not the correct standard. The Ninth Circuit has stated that, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original).

fiduciary duty by failing to conduct and full and fair investigation into the cheating incident – and that they did so to conceal their own past misconduct, including a prior cheating incident and inappropriate sexual relationships.

The Individual Defendants argue first that the BOFD claim is not viable because it is not plausible that a reasonable investigation would have encompassed all that Plaintiffs contend should have been done. This argument lacks merit. It is a question of fact as to what would have been a reasonable investigation. A reasonable jury could find that the investigation that *was* done was lacking – *e.g.*, because it was conducted in a short period of time, because Mr. Narito was not interviewed, and because test takers were not interviewed either.

The Individual Defendants contend next that the BOFD claim should be dismissed because it is not plausible that a reasonable investigation would have uncovered the asserted past misconduct. This argument presents a closer call; however, at this juncture, the Court need not resolve the dispute. Plaintiffs have claimed that the Individual Defendants did a truncated investigation in order to avoid their prior misconduct from being exposed – *i.e.*, to explain *why* the Individual Defendants did what they did. But motive may not be an essential element of a BOFD claim. *See Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011) ("'The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.'"); *Knutson v. Foster*, 25 Cal. App. 5th 1075, 1093-94 (2018) ("The breach of fiduciary duty can be based upon either negligence or fraud depending on the circumstances."); CACI 4100, Directions for Use ("The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. No fraudulent intent is required."). In other words, even without a bad motive, the Individual Defendants could arguably have failed to conduct a full and fair investigation. On the other hand, motive may have some relevance to, *e.g.*, the issues of punitive damages and possibly causation. *See Knutson*, 25 Cal. App. 5th at 1094 (stating that "[s]ubstantial factor causation is the correct causation standard for an intentional breach of fiduciary duty"; adding that "[t]he authors of the Restatement Third of the Law Governing Lawyers recognized that causation for intentional breach of fiduciary duty might be treated

differently from negligent breach").

The Court holds, however, that the Individual Defendants have made one argument challenging the BOFD claim that is meritorious. Specifically, Plaintiffs have failed to adequately allege causation because they not alleged that a full and fair investigation would have led to a different outcome – *i.e.*, that there would not have been a "blanket" invalidation of the tasting exam results or that Plaintiffs at least would not have had their tasting exam results invalidated. It is not evident at this juncture, for instance, that an investigation could have ferreted out which test-takers obtained the inside information resulting in disqualification of a limited few. Here, there is evidence that multiple test-takers had access to the information. If cheaters could not reasonably be identified and isolated, and there was a significant risk that many other unidentified test takers also cheated, such that the breadth of cheating could not reasonably be ascertained, it is conceivable that the Board may have made the same decision as it did here – to invalidate the entire test.

In their papers, Plaintiffs suggest that they do not need to make such an allegation in order to have a viable BOFD claim. Plaintiffs note that, in their complaint, they have alleged as follows: "Had CMS and the CMS Board conducted an independent investigation, the results would have been available to the CMS members, including Plaintiffs, who would have then had an opportunity to review the results of the investigation and fully prepare for and have a full and fair hearing based thereon." FAC ¶ 119. According to Plaintiffs,

> Plaintiffs do not allege – because it is not a basis of their claim – what the CMS *might* have done with the information uncovered from a legitimate investigation. Plaintiffs' allegations are that the Defendants intentionally did not conduct a full investigation, but rather conducted a sham investigation and hearing to avoid the discovery of prior cheating and sexual misconduct by members of the CMS and Defendants themselves.

Opp'n at 6 (emphasis in original). In this regard, Plaintiffs seem to assert an intangible injury to their procedural dignitary interests.

But any such argument ignores the true gravamen of their complaint – that as a result of the disqualification and loss of their Master Sommelier certification, they have lost income. Nor have Plaintiffs pointed to any case authority establishing that a breach of fiduciary duty which

7

results in no tangible harm, but only a dignitary interest in the right to a fair hearing is actionable. Traditional causation which results in measurable harm is a conventional element of a claim for BOFD. *See LaMonte v. Sanwa Bank Cal.*, 45 Cal. App. 4th 509, 517 (1996) ("In order to plead a cause of action for breach of fiduciary duty against a trustee, the plaintiff must show the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach; the absence of any one of these elements is fatal to the cause of action."); Cal. Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."); *cf. Filbin v. Fitzgerald*, 211 Cal. App. 4th 154, 166 (2012) ("To prevail in a legal malpractice action, '[s]imply showing the attorney erred is not enough.' The plaintiff must also establish that, but for the alleged malpractice, settlement of the underlying lawsuit would have resulted in a better outcome.").

Accordingly, the Court holds that the BOFD claim as currently pled is inadequate. However, the Court shall give Plaintiffs leave to amend as this specific deficiency was not the basis of the prior dismissal.

To the extent the Individual Defendants have moved to strike allegations in the amended complaint, that motion is essentially moot in light of the Court's ruling above. However, the Court notes (as it did before) that the Individual Defendants' motion to strike punitive damages is more in the nature of a motion to dismiss. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) ("hold[ing] that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law"). The Court also notes that, to the extent Plaintiffs pursue a theory of intentional BOFD, which would give rise to the possibility of punitive damages, they should not lump the Individual Defendants together but rather explain, with respect to each Individual Defendant, how he or she acted, *e.g.*, with malice.

C.  Mr. Narito's Motion to Dismiss

Like the Individual Defendants, Mr. Narito has also moved to dismiss the sole BOFD

claim asserted against him. Mr. Narito argues that the claim must fail because, at the time that Plaintiffs took the examination, they were not members of CMS and thus there was no fiduciary relationship between them and Mr. Narito.

> A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. A fiduciary relation in law is ordinarily synonymous with a confidential relation.
>
> In the commercial context, traditional examples of fiduciary relationships include those of trustee/beneficiary, corporate directors and majority shareholders, business partners, joint adventurers, and agent/principal. Inherent in each of these relationships is the duty of undivided loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent than those required of ordinary contractors.

*Gilman v. Dalby*, 176 Cal. App. 4th 606, 613-14 (2009) (internal quotation marks omitted). "Existence of a . . . fiduciary relationship depends on the circumstances of each case and is a question of fact for the fact trier." *Kudokas v. Balkus*, 26 Cal. App. 3d 744, 750 (1972); *see also Hasso v. Hapke*, 227 Cal. App. 4th 107, 150 (2014) ("[I]t is a question of fact whether, given the circumstances of the case, there exists a confidential relationship giving rise to a common law fiduciary duty.").

The Court finds that there is a question of fact as to whether Mr. Narito stood in a fiduciary relationship with Plaintiffs while they were test takers and not CMS members. A reasonable jury could find that Plaintiffs placed confidence and trust in Mr. Narito as the proctor of the exam (*i.e.*, to insure the validity of the exam and not to jeopardize the same), and that Mr. Narito accepted that position of confidence and trust in accepting the position of proctor.

Accordingly, Mr. Narito's motion to dismiss is denied.

### III.    CONCLUSION

For the foregoing reasons, the Court grants the Individual Defendants' motion to dismiss and denies the motion to strike as moot. The Court denies Mr. Narito's motion to dismiss.

Plaintiffs have leave to amend their complaint as to the Individual Defendants if they can do so in good faith. Any amended complaint must address the causation deficiency identified above. It would be helpful for Plaintiffs to clarify whether their BOFD claim is a claim for intentional BOFD or negligent. If Plaintiffs assert a claim for intentional BOFD, for which punitives are possible, then, as noted above, Plaintiffs cannot lump all Individual Defendants together.

Plaintiffs shall have four weeks to amend their BOFD claim against the Individual Defendants.

This order disposes of Docket Nos. 56 and 57.

**IT IS SO ORDERED**.

Dated: December 28, 2023

_____
EDWARD M. CHEN
United States District Judge