April 24, 2026

**Filed Electronically Via CM/ECF**

The Honorable Thomas S. Hixson
U.S. District Court, Northern District of California
Phillip Burton Federal Building and U.S. Courthouse
450 Golden Gate Avenue, Courtroom 5 – 17th Floor
San Francisco, California 94102

> Re:　*Van Wagner, et al. v. Court of Master Sommeliers – Americas*
> 　　　**Case No. 3:22-cv-5001-EMC –** *Joint Letter Brief Regarding Search Terms*

Dear Judge Hixon,

　　The Parties are unable to agree upon a proper method for limiting the search terms to reduce the number of nonresponsive documents. Thereby each Party presents their respective positions as follows:

　　<u>**CMS' Position:**</u>

　　On March 4, 2026 Defense Counsel provided Plaintiffs' Counsel with a spreadsheet showing the results of each search term. (*See Attached Spreadsheet*) Defense Counsel explained in its March 4, 2026 correspondence that there were 462,186 hits over the search terms, with each hit representing a document (not a page) consisting of a wide range of page lengths. While the terms with the largest amount of nonresponsive hits were PNG, Kith and Colletti, numerous other search terms were also resulting in a large amount of nonresponsive hits. Thereupon, Counsel for the Parties agreed to confer on reducing the number of nonresponsive hits.

　　On March 7, 2026 Defense Counsel provided Plaintiffs' Counsel with a proposed method on reducing the extreme amount of nonresponsive documents resulting from the search terms. Plaintiffs did not agree to the proposal. Plaintiffs did not provide a counter proposal. Plaintiffs' Counsel thereafter refused to confer on the issue.

　　On April 3, 2026 the Court Ordered Counsel for the Parties to appear at a Discovery Conference on April 10, 2026 to discuss ways of reducing the number of nonresponsive documents. In its Discovery Conference Statement CMS proposed three options to reduce the number of nonresponsive documents and provided a proposed timeline for production. Plaintiffs did not provide a proposal on how to reduce the number of nonresponsive documents but instead represented that they needed time to evaluate the March 7, 2026 proposal and if needed, confer on the proposal.

　　Despite their representation, on April 13, 2026, Plaintiffs' Counsel stated that they agree to remove PNG from the search terms and CMS must immediately begin producing documents. After multiple confers, on April 23, 2026, Plaintiffs ultimately agreed to "limit portions of the Kith documents and searches to exclude materials not related to the 2018 tasting exam and the

related investigation, review, and CMS decision-making."

PNG had already been removed from the search terms per the Court's Order and thus Plaintiffs offered nothing. Plaintiffs' final offer to limit portions of Kith documents to the 2018 tasting portion of the exam is likewise not an offer as the scope of responsive documents had likewise already been limited to the 2018 tasting portion of the exam by the Court. What was needed was an agreement on limiting the search terms, not expanding the scope of what constitutes a responsive document.  At no point did Plaintiffs provide a proposal on how to modify the search terms to reduce the number of nonresponsive documents during the confer process.

In the end, Plaintiffs' Counsel took the position that they could not agree to limit the search terms because they did not have any documents. This repeated position by Plaintiffs' Counsel is false and baseless. Plaintiffs' Counsel subpoenaed Kith / Colletti over a year ago on March 25, 2025 and already received documents from that subpoena nearly a year ago. In addition, they have received well in excess of 5,000 pages of documents via CMS' prior productions. They had enough documents and information to participate in the confer process.

Notwithstanding Plaintiffs' position, Counsel for CMS agreed to do a limited sampling of documents evidencing that the search terms were in fact producing nonresponsive documents. This was not discussed at the Discovery Conference but was offered by CMS because it was clear that Plaintiffs were not going to participate in the confer process. CMS' custodian handling the sampling was travelling internationally, but nonetheless, was able to work on the sampling while travelling.

On April 23, 2026, Defense Counsel provided Plaintiffs' Counsel with the sampling that had been completed thus far and again provided a second proposed resolution (the "Second Proposal"). The Second Proposal was to add the term "2018" to the following search terms:

(1) Investigation + Exam
(2) Investigate + Exam
(3) Allegations + Exam
(4) Litigation + Exam
(5) Misconduct + Exam
(6) Member conduct + Exam

In addition, add the term "2018 Exam" to the following search terms:

(1) Suspension + (Membership or Member)
(2) Expulsion + (Membership or Member)
(3) Invalidation
(4) Invalidate
(5) Kith
(6) Colletti

While the above offer would significantly reduce the number of nonresponsive hits, upon

the most recent sampling the terms "Invalidation" and "Invalidate" are problematic and adding additional terms has not significantly been effective. This is due to trademark hits and hits generated by internal notations using 2018 invalidation, which is generating hits related to budgets and trademarks amongst other nonresponsive hits. These term needs to be limited to 2018. In addition, the terms "Youngs" and "Youngsmarket" continue to result in significant unresponsive hits. These facts are highlighted in the attached table and screenshot sampling.

Overall, the most efficient way of reducing the nonresponsive hits remains to limit the time period to 2018 for of the above search terms with an additional search for documents related to the 2022 review of the 2018 investigation. CMS' custodian completed additional sampling while travelling on April 24, 2026 which was likewise submitted to Plaintiffs' counsel. In addition, they were able to construct a table showing examples of how adding terms is significantly reducing nonresponsive hits. This is especially true with Kith and Colletti, were all of the weekly newsletters and blogs are removed by adding additional terms. (See Attached Screenshot Analysis and Table)

In the end, Plaintiffs did not agree to anything and provided no proposals and no alternatives. As such it is respectfully requested that the Court consider CMS's proposal to limit the time period to 2018 for the search terms with an additional search for documents related to the 2022 review of the 2018 investigation or alternatively consider CMS' Second Proposal enumerated above and consider limiting the terms "Invalidation", "Invalidate", "Youngs" and "Youngsmarket to 2018, with the understanding that a separate search for documents related to the 2022 review being conducted.

### Plaintiffs' Position

Plaintiffs have participated in the meet-and-confer process in good faith and have not refused to narrow the disputed search terms. The Court previously removed the "PNG" term. Plaintiffs also agreed to narrow at least portions of the "Kith" search to exclude plainly nonresponsive material, including non-CMS-related Kith material unrelated to the 2018 tasting examination and the related investigation, review, and CMS's decision-making. Plaintiffs have therefore already agreed to targeted narrowing where appropriate.

The present impasse arises because CMS continues to demand further narrowing without first supplying a concrete and workable proposal sufficient to permit Plaintiffs to assess what responsive materials may be excluded. CMS and its clients possess the documents, custodians, and search mechanisms. Plaintiffs do not. Plaintiffs have therefore consistently explained that they cannot intelligently propose ever narrower search parameters in the abstract without meaningful information regarding what documents exist and without a substantive proposal from CMS that would allow an informed evaluation of the practical effect of the proposed limitations.

The chronology reflects repeated delay by CMS in providing the information it represented would be forthcoming. On April 16, 2026, defense counsel advised the Court that the parties had conferred regarding search terms and requested an extension until April 24, 2026 to complete that process, at which time the parties would either file a notice of agreement or a joint letter. On April 20, 2026, defense counsel represented that he was working with his client to provide a proposed resolution and anticipated having something by Wednesday, April 22. That did not occur. Plaintiffs

followed up repeatedly on April 22 and April 23 seeking the promised proposal so the parties could meaningfully confer before the Court's deadline. When defense counsel finally responded on April 23, the substance of his proposal largely recycled search-term concepts and limitations he had previously sent to Mr. Laszlo weeks earlier, rather than providing the new, concrete proposal he had represented would be forthcoming after the Court's extension.

Then, on the morning of April 24, immediately before the joint letter was due, defense counsel sent screenshots purporting to show examples of nonresponsive hits. Plaintiffs had already advised defense counsel that undersigned counsel had a court hearing that morning and a flight that afternoon and requested defense counsel's portion of the joint letter so Plaintiffs could prepare and finalize their response before the filing deadline. Notwithstanding that notice, defense counsel sent the screenshots at the last minute. That sequence materially impaired the conferral process because it did not provide Plaintiffs a fair or realistic opportunity to assess CMS's new information before the deadline to file this letter. Nor did the screenshots materially advance the dispute: Plaintiffs had already agreed that plainly nonresponsive, non-CMS-related Kith material could be excluded, and the screenshots largely illustrated categories of material Plaintiffs had already agreed should be removed.

Plaintiffs' position remains straightforward. Plaintiffs are willing to consider reasonable limiting terms designed to remove plainly nonresponsive material while preserving documents relevant to the 2018 tasting exam, the related investigation, subsequent review, and CMS's decision-making. Plaintiffs do not object to refinement as such. Plaintiffs do object to a process in which CMS continues to demand additional narrowing while withholding sufficient information to permit Plaintiffs to determine whether the proposed limitations merely reduce noise or instead eliminate responsive evidence.

This timing is particularly significant because trial is scheduled in less than four months. In that context, CMS's repeated delays, missed self-imposed deadlines, recycling of prior proposals, and eleventh-hour disclosures have prevented meaningful progress on discovery and delayed resolution of issues that should already be moving toward completion. Plaintiffs respectfully request that the Court order CMS to proceed promptly with production of responsive documents for the search terms and categories no longer genuinely in dispute, including all responsive materials other than the already-excluded PNG term and the plainly nonresponsive Kith material Plaintiffs already agreed may be excluded, and direct the parties to complete any remaining conferral promptly as to the narrower set of disputed terms.

Respectfully Submitted,

**Law Offices of Ravi Mehta**

*/s/ Ravi Mehta*
Ravi Mehta
Attorney for Plaintiff

**Gordon Rees Scully Mansukhani, LLP**

*/s/ Paul Harshaw*
Paul D. Harshaw
Attorneys for COURT OF MASTER
SOMMERLIERS, AMERICAS

The below table is based upon a sampling of a single server and thus the number of nonresponsive hits is significantly higher. Adding terms reduces nonresponsive hits.

| Search Term | # of matches |
|---|---|
| Investigation + Exam | 8657 |
| Investigation + Exam + 2018 | 5478 |
| Investigation + Exam + 2018 Items created or modified only in the years 2018 and 2022 | 2360 |

| Search Term | # of matches |
|---|---|
| Kith | 20,966 |
| Kith + 2018 | 8353 |
| Kith + Exam | 7555 |
| Kith + Exam + 2018 Items created or modified only in the years 2018 and 2022 | 4572 |
| Kith + Exam + 2018 Items created or modified only in the years 2018 and 2022 | 2089 |

Kith and Youngsmarket Search Results

Reducing this search to 2018 would help make the search more relevant

Examples of irrelevant search hits:

- Scheduling polls for meetings
- Kith spam emails (subscribes to their weekly newsletter) all the way thru present
- Covid communications – example:



- Random communication questions and issues from Kith. There are many examples, here are a couple:

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM



We received the two attached email from people in in the VA/DC area about a quote from Jarad Slipp about Virginia and Viognier, see below. Although we recognize this is not part of your scope for the CMS, your eyes would be appreciated but not required. I think crafting the response that Jarad Slipp is not representing the Court of Master Sommeliers in his personal feeling about Viognier is the correct direction, yes.

https://www.northernvirginiamag.com/food/drinks/2019/09/26/want-to-understand-virginia-wine-know-the-4-main-grapes/

Toward bottom of page under Viognier –

"In Delaplane, RdV Vineyard's estate director Jarad Slipp is ready for Virginia to move away from viognier. "Originally, Virginia hung its hat on viognier, and that was an epic failure because, A, viognier is disgusting and nobody wants it, and B, it's not really right for this environment," says Slipp. There's more: "It's gross. There's no acidity. It's all alcohol. It's flabby. It's the me-me-me-enough-about-you-let's-talk-about-me grape. You want to drink viognier? I'll save you a lot of money: You can get apricot baby food and mix it with vodka.""

Best regards,
Kathleen Lewis
_____
Kathleen Lewis
Executive Director - Court of Master Sommeliers, Americas
PO Box 6170 | Napa CA 94581
☎ 707.255.5056 office | 🖷 707.255.2868 fax
✉ klewis@mastersommeliers.org

*"The Court of Master Sommeliers sets the global standard of excellence for beverage service within the hospitality industry with integrity, exemplary knowledge, and humility."*



**Youngsmarket** is in the email address of 114 contacts in the CMS database, including an involved member and board member from 2022-2024 Patrick Okubo. Any communications that contain these email addresses are hits in the search.

Reducing the scope to 2018 would make the search more relevant.

Here are some examples of irrelevant hits:

- "Run of show" for Zoom mentorship webinar with students from South Korea in 2021
- Women's listening session about amplifying female voices in 2021
- Introductory course survey from 2016

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM

- There are many more examples like this.



Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM



(In this example, youngsmarket is in the email address in the Excel file attachment with a list of registrants for the listening session)



(In this example, youngsmarket is in Narito's email address which is included in the email distribution.)

**Investigation + Exam**

We have an active Exam Committee. The word investigation is a common verb. Any time that verb is used with an exam committee context it is coming up in search.

A quick search found many, many unresponsive items. From coordinating a meeting to a technical support request.

We investigate individual on a regular basis when we get inquiries from students. We conduct more than 100 exams every year all over the world and conducted approximately 30,000 individual exams in the time period from 2018-2022.

Here are some examples of nonresponsive results:



In any event, to circle the wagons: the exam comm is looking to get together in a financially responsible way (thus NYC, as we can arrange for reasonable venue costs, f&f rates on accommodations and meals and such, and since we can lean on local MS's and tasters, travel an accommodation costs can also be held in check) to investigate classic, testable wines and their evolution, and to investigate new classic/testable wines.

We feel this is important not only to remain current as well defined, 'classic wines of today' continue to evolve, and to responsibly and transparently investigate candidates to add to our exam cannon.

We are also aiming to provide transparency and communication detailing the pursuit of 'what makes a wine classic', in order to both lead by example to upper-level candidates, and to fairly expand our list of testable grapes.

Adding this onto Seattle or an in person meeting really isn't possible as those tasting days serve to vet specific exam wines, not for exploration and investigation.

Thanks,

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM

RE: 26 MS Theory USA - Editing Time! DUE March 29



Shayn Bjornholm
To  Shayn Bjornholm

Reply   Reply All   Forward

Fri 3/27/2026 1:51 PM

Please treat this as Confidential.

**Deep Dive Assigned Item Edits:**
In addition to reviewing the entire examination, please focus on the following question numbers for deep investigation of ALL aspects (including sources).



**Overall Exam Impressions:**
You can bring up suggested edits for any other items you like – have at, so long as you really dig into your assigned items first, pretty please. Please comment on overall difficulty level. ☺

**Please provide your edits by Sunday, March 29, 2026.**

**Shayn Bjornholm, MS**
**Examination Director - Court of Master Sommeliers, Americas**
c: 206.228.1768
sbjornholm@mastersommeliers.org

*"The Court of Master Sommeliers sets the global standard of excellence for beverage service within the hospitality industry with integrity, exemplary knowledge, and humility."*

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM



Certified Sommelier Examination - NYC on March 3, 2025 - ████████████ ...

⊙  ↩ Reply    ↩ Reply All    → Forward

Wed 10/1/2025 2:10 PM

Thank you very much for participating in our Certified Sommelier candidate survey last month. I write regarding the comments you made about your negative experience while sitting for the Certified Sommelier examination in New York City on March 3, 2025.

It is our goal to provide a fair, objective, and supportive environment in all Court of Master Sommeliers-Americas programming; we understand the fraught nature of performing in an exam situation in front of peers and Master Sommelier adjudicators, so coach our teachers and examiners to be understanding and encouraging when candidates have issues. We are sorry to read that you don't feel we reached that standard.

From what we can discern, you faced a challenge with the tray work during the Hospitality and Service portion. If you can provide any specifics as to what happened at that point, it would be helpful to our investigation of this incident. Unfortunately, we do not record our Certified Sommelier examinations in any way, so must ask for what you can remember.

We will do everything possible to address this situation with care and immediacy. Thank you.

Yours in service,

**Shayn Bjornholm, MS**
**Examination Director - Court of Master Sommeliers, Americas**
c: 206.228.1768
sbjornholm@mastersommeliers.org

*"The Court of Master Sommeliers sets the global standard of excellence for beverage service within the hospitality industry with integrity, exemplary knowledge, and humility."*

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM



[ExamSoft] Re: 486367 Gdowski, Caitlin (EM) - ENT: Log Files <mark>Investigation</mark> Request

**Christine Manding (Admin Support (**

To ✓ Caitlin Gdowski

Cc ✓ Julie Cohen Theobald; ○ Gianna Yarbrough

☺  ↩ Reply   ↩ Reply All   → Forward

Fri 6/27/2025 4:32 PM

ⓘ Click here to download pictures. To help protect your privacy, Outlook prevented automatic download of some pictures in this message.

You don't often get email from examsoft-admins@turnitin.com. Learn why this is important

Your request (486367) has been updated. To add additional comments, reply to this email or click the link below:
https://support.examsoft.com/hc/requests/486367



**Christine Manding** (ExamSoft)

Jun 27, 2025, 21:31 GMT+1

Hello Caitlin,

Thank you for contacting ExamSoft Support.

I understand that you have received two reports of instances where the candidates were unable to type the responses in the text fields. They were able to select a response for multiple choice questions, but were unable to input answers for "Fill in the blank" questions. You would like to put in a request for a log file analysis for the two candidates, Sara Platter and David Simpson. Rest assured that I am here to assist.

To further address your concern, I will escalate this case to our Tier 2 technical support. They will investigate the matter more thoroughly to provide a resolution. Once we have an update, a Tier 2 representative will reach out to you.

In order to proceed with the post-<mark>exam investigation</mark>, please have the students send the Examplify folder to our email: examsoft-support@turnitin.com. This process must be done using the device where the <mark>exam</mark> was taken. You may provide the students with the instructions below for more information about how to send their Examplify folder via WeTransfer:

1. Open the internet browser and go to https://wetransfer.com/
2. In the **"Email to"** field, type in "examsoft-support@turnitin.com"
3. In the **"Your email"** field, type in the email you have access to because you will need to obtain the verification sent after you click **"Transfer."**

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM

Misconduct + exam

We have a misconduct policy. Any time that policy is referred to in any exam communications, it comes up in search.

We conduct misconduct training for members and students. Anytime the training is mentioned along with the word exam, it comes up in search.



RE: CMS-A Master Sommelier Diploma Examination – Practical and Tastin...    📧 Summarize

Kathleen Lewis
To ● Shayn Bjornholm; ● Julie Cohen Theobald

😊  ↩ Reply    ↩ Reply All    → Forward    📇    ...

Fri 5/31/2024 2:57 PM

📄 ▓▓▓▓▓▓-Doctor Note.pdf  111 KB  ∨

We look forward to your attendance at the 2024 Master Sommelier Diploma Practical and/or Tasting examination taking place September 3-5, 2024, at the Post Oak Hotel in Houston, Texas.

Additional information and logistics will be sent closer to the examination. If, however, you need anything in advance, please do not hesitate to reach out to either of us at any time via the e-mail addresses listed below.

Portions Needed: (x = yes) please contact Kathleen Lewis if the parts below are not correct
- Practical (Hospitality and Service & Business of the Sommelier) - **passed 2022**
- Tasting - **x**

Must Pass Required Parts with the Court of Master Sommeliers, Americas by:
- **2024**

2024 Practical and Tasting Examination Schedule:
Your exact program times and places will be shared a week prior to the exam. The general schedule will be as follows:
- **Monday, September 2:** Master Sommelier and Candidate Reception (6:30-7:30)
- **Tuesday, September 3:** Practical – Hospitality & Service and Business of the Sommelier (all day)
- **Wednesday, September 4:** Tasting (all day)
- **Thursday, September 5:** Results and Krug Reception (10:00-12:00). New Master Sommelier Luncheon (12:00)

CMS-A Information:
The Board of Directors is committed to making our organization a safe, transparent, equitable and inclusive space according to our Commitment to Examination Integrity. As it relates to the Master Sommelier Diploma Practical and Tasting examination:
- Results and Feedback: to provide transparency and clear feedback on your efforts, we will provide "Pass" or "No Pass" results at the end of the program. You will receive your score(s) and thorough written feedback (see attached example – we reserve the right to evolve this document) by October 31, 2024. These will be followed by a live virtual review session with a Master Sommelier adjudicator.
- Candidate Recusal Policy: the CMS-A wants students to feel their most comfortable come exam time. Therefore, students may request that specific Master Sommelier examiners are recused from adjudicating their efforts. We will be sending instructions on how to submit recusals along with a list of Master Sommelier adjudicators for the Master Sommelier Diploma Practical and Tasting examination prior to the examination.
- CMS-A Ethics Reporting Line:  Students can safely and anonymously report any misconduct or abuse via third-party provider Lighthouse Services.
- CMS-A Code of Conduct:  CMS-A examinations are guided by the same core values that Master Sommeliers are expected to embody. As such, candidates are also expected to display these values while participating in CMS-A programming.

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM



## DRAFT REPLY FW: Quick note

Thu 8/21/2025 7:07 PM

Thank you for your thoughtful note. I deeply value the perspective you bring, given your long history and service to CMS-A.

The Board did discuss your position at length, including the point that many employers compensate staff for compliance training. In the end, we felt that paying members to complete sexual harassment and ==misconduct== prevention training would not uphold the standards of our organization. It risks monetizing what should be a baseline expectation of professional responsibility, and creates a slippery slope for future requirements.

There are also structural considerations. Because members serve CMS-A as independent contractors, paying them for what is essentially a condition of eligibility would move that payment into the territory of an employment obligation. That could invite unnecessary IRS scrutiny and blur the clear distinction between honoraria for services (teaching, ==examin==ing) and member compliance requirements. In short, it would create more risk for the organization without strengthening our culture.

More importantly, the decision was about culture. Our aim is to ensure that at every level of CMS-A — from Advanced Course attendees through to Master Sommeliers — there is a shared understanding of professionalism, safety, and respect. That is the culture we must build and protect. If we were seen as needing to "pay" members to uphold those values, it would undermine both our credibility and our ability to lead in the industry.

That's why the Board chose to move forward without separate compensation for the training, even while continuing to improve honoraria and other recognition for members' teaching and ==examin==ing work. I hope that distinction makes sense, even if you would have preferred a different outcome.



## RE: Elections, dues, RALIANCE

Summarize

**Kathleen Lewis**
To ● Julie Cohen Theobald

Reply    Reply All    → Forward

Tue 8/12/2025 2:23 PM

ⓘ You replied to this message on 8/12/2025 4:03 PM.

📄 CMS-A, Misconduct, and Diversity & Harassment Training.pdf  96 KB  ∨

For Traliant it was a matter of names being bolded or having an asterisk on the website and ability to teach – training was not tied to voting. See the attached communication from 10/27/2020 talking about the new Traliant training.

Reminders send about the training –

"I am reviewing the Traliant training, it appears that you have completed one of the four required modules. As previously mentioned in the newsletter, on the CMS website we will put an asterisk next to a members name denoting the Master Sommeliers eligible to teach, examine and participate Court of Master Sommeliers, Americas programming."

"My records show that you still have not completed any of the Traliant training. As a reminder, all Master Sommeliers must sign the ethics documents and complete the four Traliant courses in order to participate in any CMS-A programming."

"My records show that you still have two more modules to complete with the Traliant training. These are only available through September. Once you are logged in, you can click on the arrow by your name on the top right corner to see the courses/modules assigned to you.  Just wanted to give you a reminder!"

Best,
Kathleen

_____

**Kathleen Lewis**
Director of Operations - Court of Master Sommeliers, Americas
klewis@mastersommeliers.org
707.255.5056 office

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM

Invalidation

This is a common word especially applying to trademarks. A search came up with unresponsive results including our trademark application in Japan and a question about Singapore and Macau.

RE: Master Sommelier in Japan - No. 2023-142938_Deadline: September ...    Summarize

Julie Cohen Theobald

To  ○ Cumbow, Bob;  ● Kathleen Lewis

Cc  ○ Motherwell, Lisa

Mon 9/8/2025 6:02 PM

☺   ↩ Reply    ↩ Reply All    → Forward   📧   ...

Applicant: Court of Master Sommeliers, Americas

Your Ref:

Our Ref: 11206JP1

DUE DATE: September 7, 2025

Dear Ms. Motherwell,

We received a Notice from the Japan Patent Office to the mark "MASTER SOMMELIER" on July 29, 2025. The Notice informs that the cited mark "MASTER SOMMELIER OF SAME & device" was allowed for registration in the appeal decision and urges the applicant to file a response to the Office Action of September 10, 2024, in which "MASTER SOMMELIER OF SAME & device" was cited as a prior similar mark. The response to the Notice should be filed within 40 days, i.e., by September 7, 2025.

As for the response, there are options below, as mentioned in our recent correspondences:

(a) Filing a dissimilar argument

Reviewing the appeal decision, we note that the board of appeal held that "MASTER SOMMELIER OF SAKE & device" is not similar to "MASTER SOMMELIER". Also, the holder of the cited mark denied similarity between both marks. In view of the appeal decision and the argument submitted by the holder of the cited mark, we consider that there is a good chance of overcoming the cited mark by arguing that "MASTER SOMMELIER" is dissimilar to the cited mark "MASTER SOMMELIER OF SAKE & device", if both marks are compared in their entirety.

(b) Filing an opposition or invalidation trial against the cited mark

If your client wishes to oppose or invalidate the cited mark "Master Sommelier of Sake & device", you may file an opposition within two months from the date of publication, i.e., by September 8, 2025 or file an invalidation trial within five years from the registration date, i.e., by June 30, 2030. In view of the opposition decision and the appeal decision, in the possible opposition or invalidation trial it is essential to submit evidence to demonstrate a great amount of advertisement costs and turnover relating to the education services provided under "MASTER SOMMELIER" in Japan to demonstrate reputation of "MASTER SOMMELIER", otherwise, the chance of success would be low.

In addition to the above (a) and (b), if Class 41 is divided into a new trademark application, Class 16 will be allowed for registration as Class 16 does not conflict with the cited mark. Class 41 will be examined in the divided application from the start. In this case, it is likely that a new Office Action based on the same cited mark will be issued against the divided application within one month. If your client wishes to first obtain the trademark registration for Class 16, we recommend dividing Class 41 into a new application.

As for the disadvantage of the option (a) dissimilar argument, it would be difficult to take actions, including an invalidation trial, against "Master Sake Sommelier" and the cited mark based on similarity of marks in the future, as it is contrary to the proposed dissimilar argument.

Screenshots - examples of nonresponsive results to search terms(116346372.1) - 4/24/2026 10:06 AM

| # | Search name | Query text | Total matches | Total Matches in M365 | Total Matches Size in MB in M365 | Total Matches in BOD Share | Total Matches Size in MB in the BOD Share | Total Matches in Admin Share | Total Matches Size in MB in the Admin Share | Total Matches in Data Share | Total Matches Size in MB in the Data Share |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Youngs | ((Youngs)) | 1241 | 840 | 1,500.0 | 17 | 46.65 | 384 | 2550 | | |
| 2 | Youngsmarket | ((Youngsmarket)) | 2948 | 2711 | 1,900.0 | 14 | 45.8 | 223 | 2154 | | |
| 3 | Julie Dalton | ((Julie Dalton)) AND (Date=2018-08-01..2022-12-31) | 2339 | 2104 | 1,200.0 | 16 | 45.39 | 118 | 71.61 | 101 | 346 |
| 4 | Elton Nichols | ((Elton Nichols)) | 1788 | 1372 | 1,200.0 | 0 | 0 | 227 | 507.46 | 189 | 1610 |
| 5 | Robert Ord | ((Robert Ord)) | 2874 | 2345 | 2,200.0 | 8 | 22.26 | 240 | 483.42 | 281 | 1710 |
| 6 | Troy Smith | ((Troy Smith)) | 1204 | 921 | 775.5 | 6 | 44.51 | 60 | 63.84 | 217 | 1450 |
| 7 | Investigation + Exam | ((Investigation) AND (Exam)) AND (Date=2018-08-01..2022-12-31) | 9999 | 8657 | 4,100.0 | 94 | 36.4 | 1248 | 743.82 | | |
| 8 | Investigate + Exam | ((Investigate) AND (Exam)) AND (Date=2018-08-01..2022-12-31) | 3899 | 3147 | 1,800.0 | 41 | 1380 | 711 | 328.2 | | |
| 9 | Invalidation | ((Invalidation)) AND (Date=2018-08-01..2022-12-31) | 7224 | 6946 | 2,300.0 | 15 | 1.32 | 263 | 154.44 | | |
| 10 | Invalidate | ((Invalidate)) AND (Date=2018-08-01..2022-12-31) | 3679 | 2974 | 1,200.0 | 10 | 36.24 | 695 | 1099.36 | | |
| 11 | Richard Betts | ((Richard Betts)) AND (Date=2018-08-01..2022-12-31) | 2694 | 2430 | 561.3 | 17 | 46.4 | 247 | 378.83 | | |
| 12 | Bobby Stuckey | ((Bobby Stuckey)) AND (Date=2018-08-01..2022-12-31) | 3142 | 2840 | 915.9 | 22 | 52.74 | 280 | 194.62 | | |
| 13 | Jay Fletcher | ((Jay Fletcher)) AND (Date=2018-08-01..2022-12-31) | 5606 | 5125 | 2,200.0 | 139 | 1480 | 342 | 786.8 | | |
| 14 | Dustin Wilson | ((Dustin Wilson)) AND (Date=2018-08-01..2022-12-31) | 3590 | 3269 | 1,000.0 | 16 | 46.49 | 305 | 514.71 | | |
| 15 | Andrea Robinson | ((Andrea Robinson)) AND (Date=2018-08-01..2022-12-31) | 7319 | 6978 | 2,100.0 | 7 | 3.23 | 334 | 488.54 | | |
| 16 | Tasting + narito | ((Tasting AND narito)) | 5529 | 5502 | 2,800.0 | 27 | 50.86 | | | | |
| 17 | Png | ((Png)) | 311855 | 308833 | 85,200.0 | 250 | 103.36 | 2772 | 1691.18 | | |
| 18 | Cdp | (( Cdp )) | 1663 | 1610 | 2,800.0 | 20 | 1420 | 33 | 19.05 | | |
| 19 | Narito | ((Narito)) | 11689 | 11635 | 3,700.0 | 54 | 52.7 | | | | |
| 20 | Dan Pilkey | ((Dan Pilkey)) | 2095 | 2089 | 1,500.0 | 6 | 44.1 | | | | |
| 21 | Peter Bothwell | ((Peter Bothwell)) | 2073 | 2072 | 1,800.0 | 1 | 0.26 | | | | |
| 22 | Greg Van Wagner | ((Greg Van Wagner)) | 839 | 839 | 998.1 | 0 | 0 | | | | |
| 23 | Allegation(s) + exam | ((Allegation(s) AND exam)) AND (Date=2018-08-01..2022-12-31) | 523 | 391 | 523.4 | 132 | 69.16 | | | | |
| 24 | Litigation + Exam | ((Litigation AND Exam)) AND (Date=2018-08-01..2022-12-31) | 1148 | 1140 | 614.0 | 8 | 5.64 | | | | |
| 25 | Jfletch + exam | ((Jfletch) AND (exam)) | 66 | 37 | 33.2 | 29 | 48.46 | | | | |
| 26 | Hearing + exam | ((Hearing AND exam)) AND (Date=2018-08-01..2022-12-31) | 7812 | 7711 | 3,100.0 | 101 | 59.42 | | | | |
| 27 | 2018 examination | ((2018 examination)) AND (Date=2018-08-01..2022-12-31) | 1329 | 1303 | 481.4 | 26 | 3.85 | | | | |
| 28 | Tasting portion+2018 | ((Tasting portion) AND (2018)) | 4932 | 4915 | 2,500.0 | 17 | 55.67 | | | | |
| 29 | Misconduct + exam | ((Misconduct AND exam)) AND (Date=2018-08-01..2022-12-31) | 4202 | 4083 | 2,300.0 | 119 | 51.66 | | | | |
| 30 | Member conduct + exam | ((Member conduct) AND (exam)) AND (Date=2018-08-01..2022-12-31) | 232 | 232 | 69.5 | 0 | 0 | | | | |
| 31 | Suspension + (Membership or Member) | ((suspension) AND ((membership) OR (member))) AND (Date=2018-08-01..2022-12-31) | 7587 | 7363 | 2,300.0 | 224 | 1490 | | | | |
| 32 | Expulsion + exam | ((Expulsion) AND (exam)) AND (Date=2018-08-01..2022-12-31) | 547 | 539 | 518.5 | 8 | 2.98 | | | | |
| 33 | Kith | (Kith) AND (Date=2018-08-01..2022-12-31) | 20966 | 20962 | 3,700.0 | 4 | 0.56 | | | | |
| 34 | Coletti | (Coletti) AND (Date=2018-08-01..2022-12-31) | 13580 | 13577 | 2,300.0 | 3 | 0.37 | | | | |
| 35 | Special Committee + exam | ((Special Committee) AND (exam)) AND (Date=2018-08-01..2022-12-31) | 278 | 277 | 250.8 | 1 | 2.35 | | | | |
| 36 | testing + 2018 + exam | ((testing) AND (2018) AND (exam)) AND (Date=2018-08-01..2022-12-31) | 3022 | 3001 | 2,100.0 | 21 | 54.84 | | | | |
| 37 | Due Process + 2018 | ((Due Process) AND (2018)) AND (Date=2018-08-01..2022-12-31) | 1631 | 1610 | 521.6 | 21 | 2.97 | | | | |
| 38 | 2018 Tasting Master Sommelier Exam | ((2018 Tasting Master Sommelier Exam)) | 7 | 7 | 4.0 | 0 | 0 | | | | |
| 39 | 2018 Tasting Master Sommelier Exam Board Minutes | ((2018 Tasting Master Sommelier Exam Board Minutes)) | 7 | 7 | 4.0 | 0 | 0 | | | | |
| 40 | 2018 Tasting Master Sommelier Exam Invalidation | ((2018 Tasting Master Sommelier Exam Invalidation)) | 7 | 7 | 4.0 | 0 | 0 | | | | |
| 41 | 2018 Tasting Master Sommelier Exam Notice to Candidates of ... | ((2018 Tasting Master Sommelier Exam Notice to Candidates of Invalidation)) | 7 | 7 | 4.0 | 0 | 0 | | | | |
| 42 | 2018 Tasting Master Sommelier Exam Wine Tasting Investigation | ((2018 Tasting Master Sommelier Exam Wine Tasting Investigation)) | 7 | 7 | 4.0 | 0 | 0 | | | | |
| 43 | 2018 Tasting Master Sommelier Exam Hearing | ((2018 Tasting Master Sommelier Exam Hearing)) | 7 | 7 | 4.0 | 0 | 0 | | | | |
| | Totals | | 463186 | 452422 | 145,087.2 | 1494 | 6,806.6 | 8482 | 12,229.9 | 788 | 5,116.0 |
| | Total Matches | | 463,186 | 463186 | | | | | | | |
| | Total Size of Matched Files in MB | | | 169,239.7 | | | | | | | |